UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| BILLY K. SHIPLEY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-cv-358 |
| | ) | (Mattice/Carter) |
| MICHAEL J. ASTRUE | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

<u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the Plaintiff's Motion for Judgment on the Pleadings (Doc. 9), and Defendant's Motion for Summary Judgment (Doc. 11). This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFIRMED.

<u>Plaintiff's Age, Education, and Past Work Experience</u>

Plaintiff was born in 1961 and was 49 years old at the time of the ALJ's decision (Tr. 20, 146). He attended high school and has prior work experience as a cook, truck driver, and lubricator (Tr. 31-32, 151, 154).

1

## Claim for Benefits

Plaintiff filed an application for a period of disability and disability insurance benefits (DIB) on January 14, 2010 (Tr. 143-148), alleging he had been unable to work since August 1, 2009, due to ruptured/deteriorating discs, diabetes, hypertension, neuropathy, bipolar disorder, and depression and anxiety (Tr. 149). The Administrative Law Judge (ALJ) issued an unfavorable decision on August 23, 2011 (Tr. 11-20). The Appeals Council denied Plaintiff's request for review (Tr. 1-6) and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50

(6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since August 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: lumbar degenerative disc disease, diabetes mellitus, hypertension, neuropathy, and bipolar disorder (20 CFR 404.1520(c)).

3

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except with the mental limitations described by Dr. Lawhon in Exhibit B18F.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on xxxxxxx xx, 1961 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2009, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 11-20).

## Issues Raised

I. Plaintiff argues the Commissioner's decision is not supported by substantial evidence (Doc. 10, Plaintiffs Memorandum, p. 9-10).

## Relevant Facts

### Medical Evidence

In May 2007, Plaintiff's treating physician, Dr. Randy K. McLaughlin, reported Plaintiff

had anxiety and depression and continued to be off work (Tr. 209). In June 2007, Dr. McLaughlin noted that an Eastman counselor had referred Plaintiff to a Dr. Kutty and Plaintiff was off work. In October 2007, Dr. McLaughlin noted Plaintiff was off work and was just tired all of the time. A sleep study was ordered (Tr. 208). In January 2008, Dr. McLaughlin reported Plaintiff had anxiety and depression and was on medication but was not doing any better. Dr. McLaughlin suggested that Plaintiff go to the Pavilion for possible in-house treatment. Dr. McLaughlin noted Plaintiff was tearful in the office (Tr. 207). In January 2008, Dr. McLaughlin noted Plaintiff had chronic lateral femoral cutaneous neuropathy that had been bothering him more (Tr. 205).

In March 2009 Plaintiff came under the care of Dr. Ronald Smith, a psychiatrist. Dr. Smith's impression appears to be major depressive disorder, recurrent (Tr. 246). Plaintiff appeared to be anxious (Tr. 244). Dr. Smith diagnosed generalized anxiety disorder (Tr. 243). Plaintiff's affect was constricted, he was anxious, depressed and irritable and his GAF was 50 (Tr. 299). In June 2010, Plaintiff reported no energy (Tr. 333). Plaintiff had chronic pain and in addition had recurrent major depression, dysthymia and had a passive aggressive personality (Tr. 331). Dr. Smith completed an assessment in February 2010 that indicated Plaintiff had major depression, recurrent, dysthymia, and generalized anxiety disorder (Tr. 388). He reported that Plaintiff could not return to work noting he was seeing a psychologist (Tr. 389). In September 2010, Dr. Smith reported on a MetLife form that Plaintiff was suffering with severe major depression, recurrent, generalized anxiety disorder, personality disorder, and various physical problems and also had physical and psychological issues interfering with work. He reported Plaintiff had low stress tolerance, low energy, and poor concentration with insomnia

5

and the Plaintiff was depressed with psychomotor slowing and was irritable, anxious, and negative. He also endorsed some auditory hallucinations. His speech was non-linear and judgment poor (Tr. 365). Dr. Smith felt that accommodations at work were not feasible until there was improvement. There was no history of alcohol or drug abuse (Tr. 366).

Dr. Smith had written a letter to the Appeals Council in connection with the Plaintiff's earlier claim on August 1, 2009, that noted Plaintiff appeared depressed with a hostile dependency. He focused on his limitations and his marked sense of helplessness. The Plaintiff's stress tolerance was very low and he appeared irritable. Dr. Smith noted Plaintiff had recently had significant anxiety symptomatology and experienced panic episodes. There were avoidant behaviors and obsessional thinking and the Plaintiff had major depression-recurrent. Dr. Smith had tried various medications but there had been a decline in his functioning and the Plaintiff had become increasingly withdrawn. Dr. Smith reported the Plaintiff was quite distracted and in his opinion the Plaintiff would be unable to maintain gainful employment (Tr. 348). Dr. Smith completed a medical assessment of ability to do work-related activities on April 8, 2011. He opined Plaintiff had no useful ability to relate to co-workers, deal with the public, deal with stresses, or maintain attention and concentration due to being severely depressed and anxious although he had a fair ability to follow work rules, use judgment, and interact with supervisors (Tr. 345). He had no useful ability to understand, remember, and carry out complex job instructions and a poor ability to understand, remember and carry out detailed, but not complex job instructions, and a fair ability to understand and remember and carry out simple job instructions although the Plaintiff had limited energy, poor motivation, poor concentration, and low stress tolerance. Dr. Smith reported Plaintiff would not be able to perform adequately with any reasonable consistency and he had a poor ability to behave in an emotionally stable manner

6

or to relate predictably in social situations. The Plaintiff became extremely distressed and then became overwhelmed by his low stress tolerance (TR 346). He opined Plaintiff's limitations would last for at least a year and that the Plaintiff could not manage his own money (Tr. 347).

The Plaintiff was under the care of Dr. Thomas J. Burns, Ph.D., a clinical psychologist. In May 2009, he noted Plaintiff's father had passed away and Plaintiff was dealing with grief and supporting his mother (Tr. 428). In June 2009, Dr. Burns noted Plaintiff's sleep remained problematic, his anxiety was moderate to severe. His concentration and persistence remained moderately impaired such that ability to work for a full day remained impaired (Tr. 427). In July 2010, Dr. Burns reported Plaintiff had improved minimally with treatment but continued to feel empty, tired, having morbid thoughts, with a depressed mood. He opined Plaintiff had moderate limitations in memory, concentration and social ability with passive suicidal ideation. He opined Plaintiff was not able to remember and carry out one and two step instructions and to maintain a work routine without frequent breaks for stress related reasons. He lacked energy, often reported a sick feeling in his chest and had acute anxiety and irritability. The Plaintiff did not respond appropriately to normal stress and routine changes. Dr. Burns opined Plaintiff was not able to maintain a work schedule without missing frequently due to psychological issues although he was capable of managing his own funds. He was significantly impaired in his ability to set up and accomplish goals and would have great difficulty with objectives and performance measures, as well as handling work, pace and intellectually complicated tasks (Tr. 334).

On August 26, 2010, Dr. Burns completed an assessment for MetLife that diagnosed the Plaintiff as suffering from major depressive disorder, generalized anxiety disorder, chronic pain, hypertension, elevated cholesterol and blood sugar and he opined that the Plaintiff's GAF was

currently 50 and the highest in this past year had been 60.  He opined Plaintiff had a significant impairment in his ability to handle goals and be around workmates, difficulty with objectives and performance measures, work pace, planning tasks and performing intellectually complex tasks due to depressed mood, psychomotor slowing, and he opined Plaintiff could not tolerate stress (Tr. 414).  He thought Plaintiff had a moderate risk of self harm and that there was no history of alcohol or drug abuse (Tr. 415).  On April 7, 2011, Dr. Burns reported he had seen Plaintiff in monthly sessions since January 2008.  He diagnosed Plaintiff as suffering from major depressive disorder, moderate, and generalized anxiety disorder.  His current GAF was 50 and the highest in the last year had been 60.  Plaintiff had chronic pain, hypertension, elevated cholesterol and blood sugar.  Symptoms included low energy, feeling worthless, acute anxiety, irritable mood, feeling demoralized, and helpless/hopeless.  The Plaintiff had reported struggling with depression, having difficulty focusing, poor memory, and having disorganized thinking which interfered with his problem-solving strategies.  In Dr. Burn's clinical opinion, those significantly limiting impairments would interfere with his ability to work, meet work-related goals and objectives, and be around workmates, maintaining the pace of work and planning tasks, and performing moderately complex tasks.   The Plaintiff had a moderate risk for self-harm, including passive suicidal ideation at times, and his diagnosis was very guarded (Tr. 413).

     The Plaintiff was evaluated by Dr. Douglas G. Wright, a neurologist, in January 2010.  He diagnosed the Plaintiff as suffering from right lateral femoral cutaneous neuropathy, minor degenerative changes and disc bulge of the lumbar spine at the L5-S1, low back pain, bilateral non-specific leg pain/numbness, vitamin deficiencies, diffuse multiple focal areas of muscle pain, obesity, and chronic fatigue (Tr. 247).  There was some tiredness with higher doses of Lyrica (Tr. 248).

8

The Plaintiff was also evaluated by Appalachian Neurosurgical Clinic. A physician's assistant assessed Plaintiff to have meralgia paresthetica, bilaterally, Vitamin B12 deficiency with possible neuropathy, and early diabetes (Tr. 324, 325). In July of 2010, Plaintiff was started on Gabapentin which had helped some because Plaintiff had gained so much weight on Lyrica. He had significant stressors in his life and because those long-standing psychological issues were made worse by the pain, his daily activities had been more restricted (Tr. 326). In November 2008, it was noted that the Plaintiff had been followed for neuralgia, paresthetica bilaterally on drug therapy. He had good tone and strength in the extremities. He looked uncomfortable. He reported that it "hurts all over." He reported incapacitating pain. A previous workup, including MRI of the spine and electrical tests were all non-specific. Plaintiff reported concern about his disability (Tr. 393).

The Plaintiff was evaluated by Dr. Steven Lawhon, a clinical psychologist, on March 30, 2011. The Plaintiff underwent the PAI Scale Scores which had to be interpreted cautiously due to the extremely elevated clinical scales. He appeared to be clinically anxious and depressed and problems in thinking were also suggested by the test profile. He underwent the SIRS exam which suggested Plaintiff might be exaggerating his problems and/or malingering. An analysis of the SIRS revealed Plaintiff obtained two honest classifications, one indeterminate, one probable feigning and three definite feigning classifications. A test of memory malingering TOMM was also administered and there was no indication of malingering on that test (Tr. 340). He diagnosed the Plaintiff as suffering from bipolar disorder, mixed type, and opined that the Plaintiff's GAF was 58 and his past GAF had been 70. He opined that Plaintiff's ability to understand and remember was not significantly limited, his ability to sustain concentration and persistence was moderately limited, his social interaction was not significantly limited, and his

work adaptation was mildly to moderately limited (Tr. 341). Dr. Lawhon opined that the Plaintiff had no limitations in his ability to understand, remember and to carry out instructions (Tr. 342) and no limitation in his ability to interact appropriately with co-workers or the public, but that he had moderate limitations in concentration (Tr. 343).

In a Psychiatric Review Technique Form, a state agency psychological consultant, Dr. Jayne F. Dubois, Ph.D., opined Plaintiff was moderately limited in restrictions of activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace (Tr. 274- 287). He was further moderately limited in the following six areas: In his ability to maintain attention and concentration for extended periods (Tr. 270), to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers, and to respond appropriately to changes in the work setting (Tr. 271). She opined Plaintiff was not significantly limited in fourteen areas: understanding and memory were not significantly limited in all three areas. He was not limited in 6 of the 8 areas of sustained concentration and persistence, in social interaction not significantly limited in the ability to ask simple questions or request assistance and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Finally, he was not significantly limited in the ability to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public transportation and the ability to set realistic goals or make plans independently of others. She further opined Plaintiff could understand and remember simple one to four step detailed tasks, but could not

10

make independent decisions on an executive level, could concentrate and persist for a two hour time period in an eight hour day with customary breaks within the restrictions outlined above, could interact appropriately with the general public, co-workers, supervisors, within the restrictions applied above but would work better with things than people and could adapt to infrequent changes within the restrictions outlined earlier (Tr. 272).

Hearing Testimony

Plaintiff appeared at his hearing and testified regarding his condition. He testified that his nerves were a wreck and that Dr. Smith had kept working with him trying to give him medicine (Tr. 32). He was depressed and stayed in his room with the blinds closed. He did not answer the phone and went for fairly long periods of time when he did not really leave his house (Tr. 33). He did not handle stress well and could not concentrate (Tr. 34). He also had a numbness and tingling in his legs and the heels of his feet which interfered with his ability to stand (Tr. 35). He used to like to travel (Tr. 36).

Testimony of the Vocational Expert

A vocational expert, Ms. Donna Bardsley, appeared and testified. She described the Plaintiff's past relevant work as being a cook as being medium and semi-skilled, a truck driver which was medium and semi-skilled, and a lubricator as being heavy and semi-skilled but the Plaintiff had performed it at the heavy level. He had no transferable job skills. She was asked to assume a hypothetical individual who was 50 years of age with a twelfth grade education and the past relevant work of the Plaintiff (Tr. 38) who had the exertional limitations set forth in Exhibit B7-F, and she opined that would place an individual in a medium job category and there were numerous jobs the Plaintiff could perform within those limitations (Tr. 39). If you were to

add the additional limitations contained in Exhibit 18F, Dr. Lawhon's assessment (Tr. 39-40), that would not affect the jobs she enumerated earlier. She was asked to assume the limitations contained in Dr. Smith's assessment and she opined that would eliminate all jobs. If one assumed the limitations set forth in Exhibit 22F, Dr. Burns' assessment (Tr. 40-41), that would eliminate all jobs. If the Plaintiff's testimony were credible, there would be no jobs (Tr. 41). If the individual were found to have the six moderates, the mental residual functional capacity assessment of the medical consultant Dr. Jayne F. Dubois, contained in Exhibit 9F, that would eliminate all jobs (Tr. 41-42, 270-73).

Analysis

Plaintiff argues the ALJ's opinion regarding his mental residual functional capacity is not supported by substantial evidence because the ALJ accorded greater weight to the opinion of a consulting Psychologist who examined Plaintiff only on a single occasion rather than to the opinion of Plaintiff's treating doctor, an opinion Plaintiff claims should have been given greater weight under Social Security Ruling (SSR) 96-2p http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR96-02-di-01.html, and is supported by the State agency psychological reviewer (Plaintiff's Memorandum in Support of His Motion for Summary Judgment, Doc. 10, Plaintiff's Brief at 10-13). On the other hand, the Commissioner argues the ALJ properly weighed the medical opinions under the regulations and rulings and that the evidence clearly shows Plaintiff has the capability to perform medium work with non-exertional limitations.

The Commissioner's regulations provide that when weighing medical opinions, SSA will consider the supportability and consistency of the opinion, the specialization of the medical

source, and other factors. 20 C.F.R. § 404.1527(d)(3)-(6). Here the ALJ concluded that the opinion of consulting examiner Dr. Steven Lawhon was deserving of great weight because it was consistent with the overall objective evidence (Tr. 17, 18, see Tr. 337-44). Dr. Lawhon described Plaintiff's mood and affect as anxious and depressed, with a low average to borderline intellectual functioning range (Tr. 339). Plaintiff was rational, oriented and had no evidence of a thought disorder, and intact short-term memory (Tr. 339). Plaintiff told Dr. Lawhon that he lives alone, cooks, washes dishes, goes to the grocery store, sweeps, cleans, and gets help with laundry (Tr. 339-40). Dr. Lawhon tested Plaintiff, which revealed he was clinically anxious and depressed (Tr. 340). The testing also revealed Plaintiff could be exaggerating and/or malingering (Tr. 340). However, a test of memory malingering (TOMM) was also administered with no evidence of malingering (Tr. 340). Dr. Lawhon diagnosed bipolar disorder, mixed type, and a Global Assessment of Functioning (GAF) score of $58^1$, indicating moderate symptoms (Tr. 341). Dr. Lawhon assessed Plaintiffs as not significantly limited in ability to understand and remember, and in social interaction (Tr. 341). Plaintiff had a mild to moderate limitation for work adaptation and moderate limitations in ability to sustain concentration and persistence (Tr. 341).

---

[1] A GAF of 51-60 is equal to moderate symptoms, (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). GAF Scale American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* p.34 (4th ed. Rev. 2000) (DSM-IV).

The ALJ noted that the assessments of Dr. Thomas J. Burns and Dr. Ronald S. Smith appeared to be based on subjective complaints (Tr. 17).

Dr. Burns submitted a letter dated July 22, 2010 indicating he had treated Plaintiff for two and one-half years for a diagnosis of bipolar disorder (Tr. 334). Dr. Burns noted Plaintiff's complaints of chronic debilitating pain, "feeling empty, tired, having morbid thoughts, depressed mood" (Tr. 334). Dr. Burns noted Plaintiff lacked energy, often reported a sick feeling in his chest, and had acute anxiety and irritability (Tr. 334). Plaintiff reported chronic physical pain (Tr. 334). Dr. Burns noted Plaintiff's limitations in memory, concentration and social ability were moderate (Tr. 334)[2]. Dr. Burns opined Plaintiff was not able to remember and carry-out simple, one to two step instructions and maintain a work routine without frequent breaks for stress related reasons (Tr. 334). Dr. Burns also opined that Plaintiff was not able to maintain a work schedule without frequent absences due to psychological issues, was significantly impaired in ability to set and accomplish goals and would have great difficulty with objectives and performance measures, as well as handling work pace and intellectually complicated tasks (Tr. 334). Dr. Burns stated Plaintiff maintained appropriate social behavior, hygiene and grooming, could take care of himself, maintain independence in daily living tasks on a sustained basis, and could manage his own funds (Tr. 334).

---

[2] In a treatment note dated June 24, 2009, Dr. Burns noted that Plaintiff had moderately impaired concentration and persistence such that his ability to work for a full day and week remained impaired (Tr. 427). In a note dated September 1, 2009, Dr. Burns noted that Plaintiff had moderately impaired concentration and other cognitive functions (Tr. 425).

On April 7, 2011, Dr. Burns wrote a letter indicating Plaintiff's diagnoses were Major Depressive Disorder (Moderate) and Generalized Anxiety Disorder, with a current GAF of 50[3], and a GAF of 60 within the last year (Tr. 413). Dr. Burns recounted Plaintiff's reported symptoms of low energy, feeling worthless, acute anxiety, irritable mood, feeling demoralized and feeling helpless/hopeless (Tr. 413). Dr. Burns stated that "[i]n my clinical opinion, these significant impairments would interfere with his ability to work, to meet work-related goals and objectives, and be around workmates, maintaining the pace of work and planning tasks and performing moderately complex tasks" (Tr. 413).

On August 1, 2009, Dr. Smith noted that in the period between June 15, 2009 and August 1, 2009, he saw Plaintiff twice (Tr. 348). Dr. Smith noted Plaintiff's complaints of "much anxiety", "much tension", isolating in his house, a smothering sensation, gritting his teeth, sitting in a dark place, back and neck pain, and significantly constricted activities (Tr. 348). Dr. Smith noted Plaintiff was negative with somatic preoccupation (Tr. 348). Plaintiff appeared depressed and irritable, and had major depression, recurrent, with significant anxiety symptomatology (Tr. 348). Dr. Smith was adjusting Plaintiff's psychotropic medications (Tr. 348). Dr. Smith stated that "in my opinion he would be unable to maintain gainful employment" (Tr. 348).

On April 8, 2011, Dr. Smith completed an assessment of ability to do work-related activities (mental), and noted that Plaintiff had a fair (defined as limited, but satisfactory ability), to follow work rules, use judgment and interact with supervisors (Tr. 345). Plaintiff had no ability to relate to co-workers, deal with the public, deal with stress or maintain attention or

---

[3] A GAF of 41-50 is equal to serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV at p. 34.

concentration (Tr. 345). Dr. Smith noted plaintiff had no or poor ability to understand, remember and carry-out complex or detailed instructions, but he had a satisfactory ability to understand, remember, and carry-out simple instructions (Tr. 346). Plaintiff would satisfactorily be able to maintain personal appearance and demonstrate reliability, but was seriously limited in his ability to behave in an emotionally stable manner or relate predictably in social situations (Tr. 346). Dr. Smith did not think Plaintiff would be able to manage his own benefits, an opinion contrary to that of Dr. Burns (Tr. 347).

Plaintiff argues that Dr. Burn's and Smith's assessments were entitled to more weight than the assessment of Dr. Lawhon (Doc. 10, Plaintiff's Memorandum at 12-13). Here the ALJ resolved a conflict in the evidence, finding that Dr. Lawhon's assessment was entitled to greater weight as it was more consistent with the overall evidence (Tr. 18). As the Commissioner notes, Dr. Lawhon's assessment regarding limitations in concentration and persistence is largely consistent with Dr. Burn's assessment of moderate limitations in those areas (Tr. 334, 341, 413, 425, 427). Dr. Lawhon's assessment regarding Plaintiff's ability to understand, remember and carry out simple instructions is also consistent with the assessments of both Dr. Smith, and Dr. Jayne F. Dubois, the state agency psychological consultant (Tr. 272, 341, 346).

Further, Dr. Burns' and Smith's assessments are not consistent with each other. Dr. Smith found Plaintiff had no ability to maintain attention or concentration, while Dr. Burns and Dr. Lawhon both found Plaintiff was moderately impaired in these areas (Tr. 341, 344, 345, 427). Further, Dr. Smith indicated Plaintiff was seriously limited in his ability to relate predictably in social situations, where Dr. Burns concluded Plaintiff had a moderate limitation in social ability (Tr. 334, 346). Finally, as noted above, Dr. Smith opined that Plaintiff was not

16

capable of managing his own benefits, while Dr. Burns concluded Plaintiff could manage his own funds (Tr. 334, 347).

Additionally, as the Commissioner argues, the issue of Plaintiff's ability to work is an issue reserved to the Commissioner (Tr. 348). 20 C.F.R. § 404.1527(e)(1); <u>Warner v. Comm'r of Soc. Sec.</u>, 375 F.3d at 391. The ALJ is not required to give Dr. Smith's conclusion any weight. On appeal, this Court does not resolve conflicts in the evidence but considers only whether there is substantial evidence to support the ALJ's conclusions. <u>Jordan v. Comm'r of Soc. Sec.</u>, 548 F.3d 417, 422 (6th Cir. 2008). Here, I conclude the ALJ correctly resolved the conflicts in the evidence in a way that is supported by substantial evidence.

Plaintiff argues that more weight should have been given to the opinion of Dr. Dubois, because it was consistent with his treating doctor's assessment (Doc. 10, Plaintiff's Brief at 12). Dr. Dubois opined Plaintiff could understand and remember simple and one to four step tasks; could not make executive decisions independently; could concentrate and persist for two hour increments; could interact appropriately with the general public, co-workers, and supervisors; could adapt to infrequent changes; and, would work better with things than with people (Tr. 272).

However, as the Commissioner argues, Dr. Dubois' assessment is not consistent with the assessments from Plaintiff's treating doctors (Doc 10, Plaintiff's Brief at 12). While Dr. Dubois found Plaintiff could handle simple instructions, Dr. Burns found he could not (Tr. 272, 334). While Dr. Dubois concluded Plaintiff could concentrate and persist in two hour increments, interact appropriately with the general public and co-workers, and could adapt to infrequent changes in the work setting, Dr. Smith concluded Plaintiff had no ability to concentrate, no

17

ability to relate to co-workers or general public, and could not deal with stress (Tr. 272, 345). Further, Dr. Dubois in the May 13, 2010 Medical Consultant Analysis noted evidence of suspect symptom magnification noted in an ALJ's previous decision of June 16, 2009.

The Commissioner's regulations provide that when weighing medical opinions, generally more weight will be given to sources who have actually examined the Claimant. See 20 C.F.R. § 404.1527(d)(1). It appears the ALJ appropriately accorded more weight to the opinion of Dr. Lawhon, who actually met with, examined, and tested Plaintiff (Tr. 17, 18, 337-44).

At the hearing, the vocational expert testified that someone with Plaintiff's age, education and work history, who was capable of performing medium work, but who also had the non-exertional limitations assessed by Dr. Lawhon, could perform other work in the national economy (Tr. 39-40).

### Plaintiff's Credibility

Plaintiff next argues that the ALJ failed to correctly evaluate Plaintiff's subjective allegations (Doc. 10, Plaintiff's Memorandum. at 13-14). I disagree. The Commissioner's regulations describe what the Commissioner will consider when evaluating whether Plaintiff's allegations are credible. 20 C.F.R. § 404.1529. The regulations explain that the ALJ will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or non-treating source or other persons about how your symptoms affect you. 20 C.F.R. § 404.1529 (c)(4). I conclude the ALJ did so here. The ALJ discussed other evidence in the record which belies Plaintiff's claim of disabling impairments (Tr. 22). The ALJ discussed Plaintiff's reports of his daily activities, and

determined that his daily activities did not indicate someone who was significantly restricted (Tr. 18). Plaintiff reported he prepares easy meals for himself daily, sweeps, attends doctor appointments, drives to the store for medication and food, can pay bills, handle bank accounts, and count change (Tr. 166-67, 339-40). Next, the ALJ noted that Dr. Lawhon's test results indicated Plaintiff was malingering or exaggerating his symptoms (Tr. 18, 340). The ALJ also observed that the record contains evidence of Plaintiff's non-compliance with treatment (Tr. 18, see Tr. 362). The ALJ properly considered Plaintiff's allegations and whether they were consistent with the objective medical evidence of his treatment when determining Plaintiff's credibility.

## Conclusion

Had the Plaintiff been entitled to a *de novo* review upon appeal, I would probably have reached a different conclusion than the Commissioner did in this case. However, the standard of review is very deferential to the Commissioner and, finding that substantial evidence exists to support the Commissioner's decision, I RECOMMEND the Commissioner's decision be AFFIRMED.

I further RECOMMEND Defendant's Motion for Summary Judgment (Doc. 11) be GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (Doc. 9) be DENIED and the case be DISMISSED.[4]

> S/*William B. Mitchell Carter*
> UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).